IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| TRUSTEES OF THE CHICAGO PLASTERING | ) | |
| INSTITUTE PENSION TRUST, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 03 C 6867 |
| vs. | ) | |
| | ) | Magistrate Judge Schenkier |
| CORK PLASTERING, INC., f/k/a | ) | |
| G&J PLASTERING CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On August 27, 2007, the Court issued Findings of Fact and Conclusions of Law ("Findings and Conclusions"), pursuant to Federal Rule of Civil Procedure 52 (doc. # 101), entering judgment for plaintiffs and against G&J on liability to the Local 5 Funds for contributions G&J failed to make for hours of covered work, and to Local 5 for union dues that G&J failed to withhold and forward to Local 5.[1] Based on the Court's determination of the number of hours of covered work for which G&J owed payment for contributions and union dues, the Court ordered that the parties prepare a joint submission setting forth their calculation of damages, prejudgment interest and liquidated damages (doc. # 100). The parties filed that submission (doc. # 117), and plaintiffs filed a response to certain matters raised by G & J in that submission (doc. # 124). Thereafter, in Supplemental Findings and Conclusions issued separately today, the Court has awarded plaintiffs $1,109,466.23 for unpaid contributions and union dues, prejudgment interests, and liquidated damages.

---

[1] The Court assumes familiarity with its Findings and Conclusions, and uses the same acronyms and abbreviations to refer to the parties and exhibits as it used in the earlier Findings and Conclusions.

In its Findings and Conclusions, the Court stated that it would set a schedule for determination of reasonable audit costs, attorneys' fees and court costs (Findings and Conclusions: Conclusion No. 36). Nonetheless, in their recent submissions, the parties addressed the question of audit fees. Plaintiffs have requested an award of $45,435.00 in audit costs through October 17, 2007 (Parties' Joint Submission, ¶ 4). G&J has objected to that request on the grounds that plaintiffs have failed to provide the information necessary to allow the Court to determine whether the amount of audit fees sought is reasonable, and that in any event, the request for audit fees is overstated (*Id.* at 8-10). Plaintiffs have filed a response (Pls.' Resp., at 6-10 and Exs. 4-4a).

After review of the respective arguments and submissions, the Court concludes that plaintiffs have failed to provide the information necessary to support an award of reasonable audit costs. Accordingly, the Court denies plaintiffs' request for an award of audit costs.

## I.

An award of audit costs is not one of the remedies specifically enumerated in Section 1132(g) of ERISA. *See* 29 U.S.C. § 1132(g)(2)(A)-(E). However, courts have awarded audit costs under Section 1132(g)(2)(E) of ERISA, which allows the Court to provide – in addition to the relief specifically enumerated in Section 1132 – such other legal or equitable relief as the Court deems appropriate. Thus, Section 1132(g)(2)(E) allows, but does not mandate, an award of audit costs to plaintiffs. It is plaintiffs burden to show not only that audit costs should be awarded, but that the specific costs requested are reasonable. *Chicago District Council of Carpenters Pension Fund v. Sciortino Contractors*, 934 F.Supp. 277, 279 (N.D. Ill. 1996).

In this case, plaintiffs have attempted to support their requests for $45,435.00 in audit costs through a supplemental declaration accompanied by approximately 100 pages of billing records

(Pls.' Resp., Ex. 4 and Ex. 4a). Plaintiffs' auditor, Gary Gebis, has submitted a supplemental declaration stating that the audit costs were incurred during the period December 1, 2002 through October 17, 2007 (*Id.*, Ex. 4, ¶ 3). Mr. Gebis states that during this time period, some 500 hours of work was performed, with "approximately" 240 hours being expended between December 1, 2002 and June 30, 2004 in connection with the original audit, field work, and the final audit, and another "approximately" 260 hours expended between June 30, 2004 to October 17, 2007, which was "largely . . . spent on matters related to litigation" (*Id.*). The records attached to Mr. Gebis's supplemental declaration reveal the 12 different individuals performed the audit work during the period December 1, 2002 through October 17, 2007.[2]

We have no reason to doubt that plaintiffs' records accurately state the time the auditors devoted to this matter. However, neither the records nor Mr. Gebis's declaration discloses the background or experience of each of these individuals; the rates at which their time was billed; or what specific work each auditor performed on each date. Indeed, Mr. Gebis states that "P&G's auditors do not make contemporaneous records, and P&G does not maintain records, of the particular audit tasks in which each auditor is engaged for each of the hours indicated in P&G's billing records" (*Id.*, Ex. 4, ¶ 2). As a result, the Court is unable to ascertain what work each individual did on a given day; whether there was any unnecessary duplication of efforts owing to the large number of people who were assigned to work on the task; on whether the hourly rates charged for the services are reasonable rates charged generally in the market for auditors with comparable experience performing comparable tasks.

---

[2] Those individuals are Carl Bendlin, Brent Campbell, Astrid Downey, Randy Ellis, George Ferrante, Gary Gebis, Omar Hammad, Carolyn Huchro, Mary Kedzie, Terri McMillian, William Piotrowski, and John Stoeckert.

In a petition for an award of attorneys' fees under a fee shifting statute, this lack of detail would be unacceptable, and would lead to a denial of fees. In our view, the same standard should apply here, as other courts have held. *See, e.g., Trustees of the Plumbers Local Union No. 1 Welfare Fund, etc. v. Philip General Construction*, No. 05 CV 1665, 2007 WL 3124612, at *14 (E.D.N.Y. Oct. 23, 2007) (an award of audit costs is "generally determined by utilizing the same standards the Court applies in awarding attorney's fees"); *see also King v. JCS Enterprises, Inc.*, 325 F.Supp.2d 162, 173-74 (E.D.N.Y. 2004).

It is not enough for plaintiffs to summarily assert, as they do, that all of the tasks that resulted in the expenditure of some 500 hours of work were "reasonable and necessary" to the audit and to the prosecution of the case (Pls.' Resp., at 7). Plaintiffs must prove, and not merely assert, that the audit fees they seek to recover from G&J are reasonable. Otherwise, Section 1132(g)(2)(E) would constitute a blank check, to be filled in with whatever amount a plaintiff might expend in audit costs, no matter how unreasonable that amount might be. Particularly given the size of the audit costs that plaintiffs seek to recover here, we find that it would be inequitable to award those costs based on the minimal evidence that plaintiffs have offered. *See King*, 325 F.Supp.2d at 173-74 (in a case where plaintiffs sought audit costs of $84,572.66, the Court stated that "[i]t would be inequitable to allow costs of this audit, particularly given the size of the expense, when the Trustees have failed to meet the specificity standards that generally apply to attorney's fees and costs"). Accordingly, we conclude that plaintiffs have failed to carry their burden of demonstrating that they should recover audit costs under ERISA.

## II.

Even if audit costs are not awarded under Section 1132(g)(2)(E), a plaintiff may recover audit costs if there is a relevant agreement between the parties "that specifically require[s] shifting such costs." *King*, 325 F.Supp.2d at 172. In this case, plaintiffs do not point to any provision in the relevant Trust Agreements to support the award of audit costs here. And, our independent review of those agreements leads us to conclude that those documents do not provide a basis for an award of the audit costs that plaintiffs seek.

The Trust Agreements do not themselves uniformly identify audit costs as an item that plaintiffs may recover in the event of a delinquency. The Trust Agreement for CPI identifies audit fees as an item that is recoverable upon a proven delinquency (PX 7, Art. 6.02). On the other hand, the Trust Agreements for the CPI Pension Fund, the CPIHW Fund, the CPIRS Fund, and the Apprentice Fund all refer generally to the right to recover "reasonable attorneys' fees and costs," without specifically identifying audit costs (PX 3, Art. V(2); PX 5, Art. V(2); PX 8, Art. X(2); PX 10, Art. V(2)). In addition, the Collection and Audit Policy, which plaintiffs have identified as the collection policy applicable to all of the Local 5 Funds, does not provide for recovery of audit costs (PX 2, at 3-4). The Collection and Audit Policy sets forth the circumstances under which audits may be performed, and provides that "the scope of any audits shall be determined by the Trustees in their sole discretion and in accordance with the Trust Agreements" (*Id.* at 4). The section on collection procedures provide a detailed statement of the right to recover, and the manner of calculating, interest on unpaid contributions and liquidated damages – but says nothing about audit costs.

The Collection and Audit Policy does state that if a lawsuit is commenced, "a total of 20 percent liquidated damages shall be due, plus accrued interest, attorneys' fees and costs" (*Id.*, at ¶

4). We are unwilling to interpret this general reference to "attorneys' fees and costs" as including audit costs for two reasons.

*First*, one of the Trust Agreements specifically authorizes recovery of audit costs, while the others do not. Thus, when the Trustees sought to authorize the recovery of audit costs in a trust document, they knew how to do so explicitly. And, in the Collection and Audit Policy, they did not explicitly provide for the recovery of audit costs.

*Second*, the context in which the reference to "recovery of attorneys' fees and costs" arises in the Collection and Audit Policy is when a suit has been commenced. In the context of litigation, costs typically refer to court costs that are awarded to a prevailing party under Fed.R.Civ.P. 54(d)(1). An award of court costs reimburses a prevailing party for those compensable costs enumerated in 28 U.S.C. § 1920. Audit fees do not fall within the costs that are enumerated in Section 1920 – as plaintiffs have recognized by not seeking recovery of the audit fees as part of their petition for costs pursuant to Rule 54(d).

Finally, we note that even if the Collection and Audit Policy called for an award of audit costs, plaintiffs' request for audit costs here would fail for the same reason that it fails under Section 1132(g)(2)(E). The Collection and Audit Policy does not identify a set amount of audit costs to be assessed. *Compare King*, 325 F.Supp.2d at 173 (audit costs awarded under a trust agreement that specified the auditor's fees at $150 per day). In the absence of an agreement as to the specific amount of audit costs to be shifted, it would be incumbent upon plaintiffs to prove – no less under the Trust Agreements than under ERISA – that the amount of audit fees they seek to recover is reasonable. The same lack of information that is fatal to plaintiffs' request for audit fees under ERISA would be equally fatal to any claim for recovery of audit fees under the Trust Agreements.

## CONCLUSION

For the foregoing reasons, we deny plaintiffs' request for an award of audit fees.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: November 14, 2007**