IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRUSTEES OF THE CHICAGO PLASTERING    )
INSTITUTE PENSION TRUST, *et al.*     )
                                      )
            Plaintiffs,               )
                                      )    No.   03 C 6867
vs.                                   )
                                      )    Magistrate Judge Schenkier
CORK PLASTERING, INC., f/k/a          )
G&J PLASTERING CO., INC.              )
                                      )
            Defendant.                )

## MEMORANDUM OPINION AND ORDER

Based on Findings of Fact and Conclusions of Law issued on August 27 and November 14,
2007 (doc. ## 101, 128), this Court entered judgment for plaintiffs and against G&J on liability to
the Local 5 Funds for contributions G&J failed to make for hours of covered work and to Local 5
for union dues that G&J failed to withhold and forward to Local 5, and it awarded plaintiffs a total
of $1,109,466.23 for unpaid contributions and union dues, prejudgment interest, and liquidated
damages (doc. # 129).[1]   In separate Memoranda Opinion and Orders dated November 14 and 15,
2007, the Court denied plaintiffs' request for an award of audit costs (doc. # 131), but awarded
plaintiffs' $9,784.67 in taxable costs pursuant to Fed. R. Civ. P. 54(d) (doc. # 126).[2]

---

[1]The Court assumes familiarity with its earlier Opinions in this case, and uses the same acronyms and
abbreviations to refer to the parties and exhibits as it used in the earlier Opinions.

[2]In a Memorandum Opinion and Order dated November 26, 2007 (doc. # 135), the Court denied plaintiffs'
motion to reconsider the denial of audit costs. On December 10, 2007, defendant filed a notice of appeal (doc. # 137).
The appeal remains pending. *Trustees of the Chicago Plastering Institute Pension Trust, et al. v. Cork Plastering, Inc.,
f/k/a G&J Plastering Co., Inc.*, No. 07-3960 (7th Cir.).

We now address the lone remaining dispute between the parties at the trial court level: plaintiffs' petition for attorneys' fees (doc. # 155). In their petition, plaintiffs seek an award of $172,341.71 for services performed through November 16, 2007, an amount that includes $3,008.71 in Westlaw charges. Plaintiffs also seek an additional $7,439.00 in attorneys' fees for work relating to the petition for attorneys' fees, bringing their total request to $179,780.71 (doc. # 155: Pls.' Pet. at 1 and n.1). Defendant opposes these requests. For the reasons set forth below, we grant plaintiffs' fee petition, but in the reduced amount of $174,614.31.

## I.

In the face of the award of $1,109,466.23 that plaintiffs achieved after a bench trial and post-trial briefing, defendant (quite properly) does not challenge plaintiffs' status as prevailing parties for purposes of an award of attorneys' fees. *See* 29 U.S.C. § 1132(g)(2)(D) (in an ERISA case seeking an award of delinquent contributions "in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorneys' fees and costs of the action, to be paid by the defendant . . ."). Thus, we must consider not the question of whether plaintiffs are entitled to recover reasonable attorneys' fees, but rather whether the fees sought in plaintiffs' petition are reasonable.

In determining what attorneys' fees are reasonable to award, our starting point is the "lodestar" analysis: that is, the number of hours reasonably expended by plaintiffs' attorneys multiplied by their reasonable hourly rates. *People Who Care v. Rockford Board of Education*, 90 F.3d 1307, 1310 (7th Cir. 1996); *see also Dutchak v. Central States, Southeast and Southwest Areas Pension Fund*, 932 F.2d 591, 596 (7th Cir. 1991) ("[c]alculation of the lodestar is the starting point for any award of attorneys' fees. It represents the number of hours reasonably expended multiplied by the appropriate hourly rate"). The Court may then increase or reduce the lodestar

2

calculation based on consideration of a variety of factors, including the degree of success plaintiffs have obtained, *see, e.g., Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999), and the relationship between the lodestar amount and the damages awarded. *See, e.g., Moriarty v. Svec*, 233 F.3d 955, 967-68 (7th Cir. 2000) (while there is no rule "requiring that a reasonable attorney's fee be no greater than some multiple of the damages claimed or recovered, . . . proportionality concerns are a factor in determining what a reasonable attorney's fee is").[3]

A trial court's determination of a reasonable fee award to the prevailing party is reviewed under the highly deferential abuse of discretion standard. *Dutchak*, 932 F.2d at 596. The Seventh Circuit has offered a number of vivid descriptions for just how deferential that standard of review is, ranging from the "dead fish" metaphor, *Parts and Elec. Motor, Inc. v. Sterling Elec. Inc.*, 866 F.2d 228, 233 (7th Cir. 1988) ("to be clearly erroneous, a decision must strike us as . . . wrong with the force of a five-week old, unrefrigerated dead fish"), to the "dead wrong" standard. *Dutchak*, 932 F.2d at 596 ("even for those of us with clogged nostrils, findings must be 'dead' wrong to be within reach" of the abuse of the discretion standard).

Defendants focus their attack on three elements of plaintiffs' petition. *First*, defendants argue that the hourly rates sought by plaintiffs' attorneys are too high (Def.'s Resp. at 1-2). *Second*, defendants argue that plaintiffs devoted too much time to certain tasks in the case (*Id.* at 2-9). *Third*, defendants argue that plaintiffs' requests for compensation for Westlaw charges should be denied,

---

[3]In this case, plaintiffs do not seek an increase in the lodestar calculation. For their part, while defendants seek a reduction of the fee request based on various considerations, they do not argue that the amount of fees requested ($179,780.71) should be reduced on the ground that it is disproportionately large when compared to the amount of plaintiffs' recovery ($1,109,446.23).

3

because they are excessive and are not sufficiently described (*Id.* at 9). We address each of those matters in turn below.

A.

We start with the question of the reasonable hourly rate for plaintiffs' attorneys and law clerks. Plaintiffs' fee request is based on the hourly rate of $215.00 for each attorney and $65.00 for each law clerk who worked on the case. These hourly rates are based on the 2008 rates billed by plaintiffs' law firm, Jacobs, Burns, Orlove, Stanton & Hernandez (the "Jacobs firm"), for all work that the Jacobs firm performs for plaintiffs (Pls.' Pet., Ex. unmarked at ¶¶ 4-5).

Defendants do not claim that the hourly rates of $215.00 for attorney time and $65.00 for law clerk time exceed the rates that lawyers and law clerks from the Jacobs firm can command in the marketplace, or that they exceed what attorneys and law clerks from the Jacobs firm charge plaintiffs for services in 2008. Rather, defendants argue that plaintiffs' lawyers should be compensated based on the hourly rates they were charging the plaintiffs for services in each of the six years (2003 through 2008) that services were rendered (Def.'s Resp. at 1-2). The Jacobs firm charged plaintiffs the following hourly rates for attorney services in each of the years in question: $175.00 an hour in 2003; $180.00 an hour in 2004; $190.00 an hour in 2005; $200.00 an hour in 2006; $205.00 an hour in 2007; (Pls.' Pet., Ex. B). Defendants say that using 2008 billing rates to award attorneys' fees for services performed in 2003 through 2007 would give plaintiffs "a windfall which the Courts do not allow" (Def.'s Resp. at 1). For the reasons set forth below, we disagree.

Courts agree that when a court awards attorneys' fees to a prevailing party, some adjustment for fees incurred in earlier years is necessary, because "[a] prevailing plaintiff who has paid her attorney over the course of the lawsuit has been deprived of the use of that money . . ." *Heder v. City*

4

*of Two Rivers*, 255 F. Supp.2d 947, 957 (E.D. Wis. 2003). One way of making that adjustment is by awarding fees based on rates applicable during the years in which the service was rendered, and then adding interest to compensate for the time value of money. However, as defendant acknowledges (Def.'s Resp. at 2), case law within this circuit supports paying an attorneys' fees award at current billing rates in lieu of awarding interest on rates for services performed in earlier years. *See, e.g., Skelton v. General Motors Corp.,* 860 F.2d 250, 255 n.5 (7th Cir. 1988) (while applying current billing rates for assessing interest is an acceptable method of properly compensating the prevailing party for attorneys' fees incurred over a period of years, "[t]he courts in this circuit generally use current rates"). Whether a court awards attorneys' fees for all prior years of service based on current billing rates or, instead, awards attorneys' fees based on the hourly rates applicable when the services were rendered and then adds interest, the goal is the same: to make sure that the plaintiffs are fully compensated for the attorneys' fees they incurred. Moreover, both using current hourly rates to calculate the lodestar for services rendered in prior years and assessing interest on attorneys' fees incurred in prior years are approximate – not precise – means of accomplishing that goal. *Heder*, 255 F. Supp.2d at 958.

A lodestar that calculates fees for prior years of service based on current hourly rates might create a windfall if the increase in rates over time does not only reflect inflation, but also takes into account distorting factors such as an attorney's increased experience or supply and demand considerations. *See Fleming v. Kane County*, 686 F. Supp. 1264, 1272-73 (N.D. Ill. 1988); *Heder*, 255 F. Supp.2d at 958. However, in this case, we see no such distorting factors. The increase in the hourly rates that the Jacobs firm charged to plaintiffs between 2003 and 2008 plainly did not reflect increased experience of the attorneys. The lead attorneys who billed virtually all of the attorney time

5

in the case, Ms. Voyles and Mr. Huffman-Gottschling, have received judicially-awarded attorneys' fees well in excess of the rates they charged the plaintiffs from 2003 through the present. *Moriarty v. Muzyka, Ltd.*, No. 03 C 7946, Mem. Op. and Order at Ex. 1 (N.D. Ill. Jan. 25, 2006) (awarding hourly rates of $275.00 to Ms. Voyles and $250.00 to Mr. Huffman-Gottschling); *Hardrick v. Airway Freight Systems, Inc.*, No. 98 C 1609, 2000 WL 263687, *2 (N.D. Ill. Feb. 28, 2000) (awarding Ms. Voyles an hourly rate of $230.00). The same is true of law clerks: the $65.00 an hour sought by plaintiffs here is less than the $85.00 an hour rate awarded in January 2006. *Moriarty*, No. 03 C 7946, Mem. Op. and Order, Ex. 1. The modest increase in hourly rates charged by the Jacobs firm to plaintiffs between 2003 and 2008 (averaging 4.2 percent per year) is, in our judgment, attributable to inflation. It is therefore reasonable to apply current rates in calculating the lodestar, as plaintiffs have done.

Finally, we note that defendant says the prime rate is the presumptively appropriate interest rate that we should use to adjust fees for service in 2003 through 2007 (Def.'s Resp. at 2). But, defendant does not state what specific interest rate(s) should be applied, or how those rates would affect plaintiffs' total fee request. In the parties' briefing on the issue of prejudgment interest, it was undisputed that the average prime interest rate from November 30, 1993 through July 31, 2007 was in excess of five percent (doc. # 128: Supplemental Findings of Fact and Conclusions of Law, Nov. 4, 2007, at 6-7). The average annual hourly rate increase by plaintiffs' attorneys over the time period from 2003 to 2007 was less than that: 4.2 percent. Defendant has offered no basis to believe that calculating plaintiffs' attorneys' fees by using interest as a delay enhancement would lead to a materially different result than by using the 2008 rates of the Jacobs firm when calculating all of the

6

attorneys' fees. We therefore opt to choose the method selected by plaintiffs – the application of 2008 rates for all hours incurred in the case – as an appropriate basis for the lodestar calculation.

**B.**

In their petition, plaintiffs seek payment for 975.2 hours of services rendered by attorneys (706.30 hours) and law clerks (268.9 hours) from the commencement of the case through November 16, 2007 (upon the entry of final judgment). In addition, plaintiffs seek payment for an additional 34.9 hours of attorney time devoted to preparing and filing the fee petition and supporting materials (Pls.' Pet. at 1 n.1).

Defendant claims that the time plaintiffs devoted to the case was excessive. Defendant poses 34 separate objections to various elements of the time the Jacobs firm scheduled to the case, some of which challenge discrete entries and others of which challenge groups of entries (Def.'s Resp. at 2-9). Defendant does not calculate the total reduction in the number of hours that would result from adopting its 34 objections, but plaintiffs do: plaintiffs say that based on its 34 objections, defendant seeks to reduce the plaintiffs' claim from 975.2 hours to 538.9 hours (Pls.' Reply at 3).

At the threshold, we note that during the process of exchanging information pursuant to Local Rule 54.3, defendant disclosed that its attorneys devoted 865.73 hours to the case through the entry of judgment (Pls.' Pet., Ex. unmarked, ¶ 8). We do not find persuasive the proposition that plaintiffs' attorneys, who bore the burden of proving the case at every step, should have been able to do so while spending only 62 percent of the time that defendants' attorneys spent on the case (538.9 hours compared to 865.73 hours). *See JCW Investments, Inc. v. Novelty, Inc.*, 366 F. Supp.2d 688, 690 (N.D. Ill. 2005) ("the fact remains that the burden of proof of infringement and remedy was always on plaintiff," and the fact "[t]hat its lawyers spent more time than defendant's [in discharging

7

that burden] can hardly be used to reduce the amount of fees owed to plaintiff"); *CBS Broadcasting, Inc. v. Browning*, No. 06-22463-CIV_____, 2007 WL 2850527, *8 (S.D. Fla. Sept. 21, 2007) ("[u]sually a plaintiff, who has to carry the burden of proof, spends a great deal more time on litigation than a defendant"). While not dispositive, this evidence strongly suggests that defendant's objections are overreaching. Our review of the specific objections convinces us that, in the main, they are just that: overreaching.

Many of defendant's objections fall under the category of "nit-picking from the outside and in hindsight [which] provides no basis for disallowance" of fees. *Moriarty*, No. 03 C 7946, Mem. Op. and Order at 5. For example, defendant quarrels with the amount of time that plaintiffs spent in conducting various aspects of discovery, such as preparing written discovery and preparing for and taking depositions (Def.'s Resp. at 6-7 (Items C, D, E, F, G, L, M, O)). We have considered each of those challenges, and reject them. The time devoted to preparing the written discovery requests and requests to admit was within the bounds of reasonableness. The same is true for the amount of time spent to prepare for and take expert depositions, and to prepare for and take the deposition of Mr. Palicsek, defendant's principal and a central witness in the case.

Defendant criticizes the amount of time plaintiffs spent in preparing motions *in limine*, preparing for trial, preparing certain post-trial submissions (Def.'s Resp. at 7-9 (Items N, Q, U, W, BB, CC, DD, EE, and GG)). We have considered each of those challenges, and reject them. For example, we do not think it excessive to spend four hours to review the depositions of three witnesses who were identified as "will call" trial witnesses (Item U); to spend 27.7 hours on motions *in limine*, including motions directed to the two accounting experts who testified at trial (Item BB); to spend 52.2 hours to prepare direct and cross-examination outlines in a case where 15 witnesses

8

were identified in the final pretrial order as "will call" witnesses and there were additional witnesses identified as "may call" witnesses (Item DD); or to spend 97.8 hours in preparing findings of fact and conclusions of law in a case where there were many complicated exhibits and more than 670 pages of testimony and argument from trial (Item DD). Nor was it excessive for plaintiffs to submit 136 proposed findings of fact and 41 conclusions of law with ample supporting citation, where the Court ultimately issued 78 findings of fact and 49 conclusions of law.

Defendant also criticizes plaintiffs for having two attorneys work on one particular document (Def.'s Resp. at 8 (Item R)) and on trial preparation (*Id.*, Item W). We find nothing unusual or inappropriate about having two attorneys working on a case, and having them both work on a pleading and on trial preparation. "The use of more than one lawyer is common in legal practice. Consultation among lawyers insures that they do not overlook significant facts or injuries." *Bohen v. City of East Chicago*, 666 F. Supp. 154, 157 (N.D. Ind. 1987) (Easterbrook, C.J., sitting by designation at the district court level).

Defendant objects to various entries of law clerk time as being excessive (Def.'s Resp. at 7-8 (Items K, P, T, Y, Z)). We find it salutary to have younger attorneys or law clerks perform tasks appropriate to their skill and experience, at a lower billing rate, in lieu of having more higher priced attorneys do that work. We have reviewed each of these particular entries, and find that the time the law clerks devoted to them was within the bounds of reasonableness and should not be reduced.[4]

---

[4]We note that plaintiffs' fee bill may have been higher had Ms. Voyles or Mr. Huffman-Gottschling discharged these tasks. For example, defendant says that the amount of time that should have been spent in reviewing invoices should have been 40 hours and not 132.2 hours. At a rate of $65.00 per hour, the 132.2 law clerk hours devoted to the task results in an amount of $7,593.20. By contrast, 40 attorney hours doing the work, at $215.00 per hour, would result in a fee of $8,600.00. Even accounting for some potential inefficiencies due to the fact that law clerks are less skillful and experienced than attorneys, plaintiffs' use of law clerks to perform these tasks reduced the ultimate fee bill in the case.

9

Defendant also challenged 7.5 hours that plaintiffs' lawyers spent on investigating various financial and bankruptcy matters involving the defendant (Def.'s Resp. at 7 (Item J)). Defendant does not claim that this amount of time was excessive for the work performed, but instead says that it was unrelated to new issues in the lawsuit. We disagree. Issues concerning defendant's solvency and change of ownership arose during a settlement conference, and the Court specifically ordered defendant to share certain financial information with the plaintiffs (doc. # 56, Order of May 10, 2006; doc. # 57, Order of June 5, 2006). We will not reduce plaintiffs' request for work done that was consistent with orders of the Court.

The fact that we have rejected the foregoing challenges does not mean that defendant has completely struck out in its attack on the hours plaintiffs devoted to the case. Plaintiffs accepted certain of defendant's objections, and as a result removed 13.9 hours of time on their claim even before filing the Petition (Pls.' Mem. at 5 n.2 (Items B, H, I, V, X and HH); Pls. Pet., Ex. E).[5] In addition, we are persuaded that four other objections have merit, and require certain reductions.

*First*, we agree that plaintiffs should not be compensated for an entry on January 10, 2004 for .6 hours spent preparing a motion for default judgment (Def.'s Resp. at 6 (Item A)). The docket sheet does not show that a motion for default was ever filed, and in fact defendant filed an answer to the complaint on December 11, 2003.

*Second*, we agree that 3.1 hours for drafting a two-page letter on June 20 and 21, 2006 is excessive (Def.'s Resp. at 8 (Item S)). We have reviewed the letter (Pls.' Reply, Ex. C), and while

---

[5]When we add the time plaintiffs agreed to eliminate for each of these items, we calculate 14.5 hours, not 13.9 (.6 hours for Item B, .7 hours for Item H, .5 hours for Item I, 3.2 hours for Item V, 1.0 hour for Item X, and 8.5 hours for Item HH). However, defendant does not raise this point, and we therefore do not reduce plaintiffs' fee request to account for this minor discrepancy.

we have no doubt (and defendant expresses none) that this is the amount of time actually spent on the task, we disagree with plaintiffs that upon reaching that conclusion our task is at an end. ERISA requires that a prevailing plaintiff be awarded "reasonable" attorneys' fees, and not just any and all attorneys' fees that are billed. While we agree that this does not give us license merely to second guess contemporaneous entries of attorney time, we are not required to award attorneys' fees for time billed that appears on its face to be outside the bounds of reasonableness. In our judgment, spending 3.1 hours on the two-page letter at issue is outside the bounds of reasonableness. Defendant suggests a reduction of 1.6 hours, and we agree.

*Third*, defendant criticizes 85.3 hours spent by law clerks reviewing exhibit summaries, on the ground that it duplicates the 132.2 hours spent on the same task earlier in the year (Def.'s Resp. at 8 (Item AA)). Our review suggests that defendant has a point here, as the entries indicate a duplication of these tasks. Plaintiffs offer no explanation beyond what appears in the billing records. Again, we do not doubt that the time scheduled was in fact devoted to the matter but, based on our review of the billing records, we find substantial duplication. Accordingly, we will award the 25 hours for this work, thus reducing the requested award for by 60.3 law clerk hours.

*Fourth*, defendant challenges 6.6 hours charged for preparing the bill of costs, arguing that the task should not have taken more than 3 hours (Def.'s Resp. at 9 (Item FF)). We have reviewed the bill of costs again, and, we conclude that this task, which was performed by Mr. Huffman-Gottschling, could have been prepared by a law clerk. We do not criticize plaintiffs for having an attorney prepare the bill of cost, but we do find that for this ministerial task, 6.6 hours was too much time. We will award 3 hours for preparing the bill of costs, thereby reducing the request by 3.6 hours.

To summarize, we reduce plaintiffs' request for compensation for attorney time by 5.8 hours, and for law clerk time by 60.3 hours. This results in a reduction in fees for attorney time of $1,247.00 (5.8 hours times $215.00 per hour), and fees for law clerk time of $3,919.50 (60.3 hours time at $65.00 per hour), for a total reduction of $5,166.50.

## C.

We now briefly turn to the request for 34.9 hours in connection with preparing plaintiffs' fee petition. Ample case law supports the proposition that when a prevailing party is forced to litigate to obtain a fee award, a component of that award may include a reasonable fee for the time expended in preparing and litigating the fee petition. In deciding what amount of fees to award for litigating the fee issue, a court must consider whether the time expended on fee petition was reasonable. *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 894 (7th Cir. 2001); *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999). One factor in determining the reasonableness of the hours spent on the fee petition is "the comparison between the hours spent on the merits and the hours spent on the fee petitions." *Batt*, 241 F.3d at 894.

In this case, the amount spent on the opening fee petition (34.9 hours) is a little more than three and one-half percent of the amount of time (975.2 hours) plaintiffs devoted to litigating the merits. Having reviewed the fee petition and supporting memorandum, we conclude that 34.9 hours devoted to preparing those submissions was reasonable. In its brief, defendant does not offer any criticism of that expenditure of time. We therefore grant plaintiffs' request for 34.9 hours in litigating the fee petition, resulting in an award of $7,439.00 (34.9 hours times $215.00 per hour).[6]

---

[6] In their reply, plaintiffs do not seek additional fees for the time spent in preparing the reply, or request an additional opportunity to do so.

12

**D.**

Finally, we address plaintiffs' request for $3,008.71 for Westlaw research. Computerized research is compensable as an element of attorneys' fees in a fee-shifting case, on the theory that the use of electronic legal research tools helps reduce the amount of attorney time spent on the case. *Harmon v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991).

In this case, plaintiffs provided a breakdown of the Westlaw charges by date and the attorney performing the Westlaw research; they disclosed both the amount of time spent using Westlaw and the charge (Pls.' Pet., Ex. C). Taken together with the contemporaneous billing records, this provides an adequate basis for defendant to identify any particular charges that it claims were excessive or unjustified. However, defendant chose not to do so; and, instead, it has blanketly objected to all the charges. We reject defendant's challenge and award plaintiffs the full amount of Westlaw charges of $3,008.71.

## CONCLUSION

For the foregoing reason, we grant plaintiffs' fee petition (doc. # 155) in the amount of $174,614.31, a reduction of $5,166.50 from the $179,780.71 sought by plaintiffs. This amount consists of: (1) $150,607.50 in attorney time (700.5 hours at $215.00 per hour) through the entry of final judgment; (2) $18,559.00 for law clerk hours (based on 208.6 hours at $65.00 per hour);

13

(3) $3,008.71 in Westlaw charges; and (4) $7,439.00 in attorneys' fees expended on litigating the fee petition (34.9 hours at $215.00 per hour).

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated:  March  18, 2008

14